## *Ex parte* ROY BURRIS.

No. A-2045.    Opinion Filed July 26, 1913.

(133 Pac. 1139.)

ADULTERY—Habeas Corpus—Preliminary Examination—Evidence. For testimony which justified an examining court in holding a defendant to answer a charge of adultery, see opinion.

Original application for writ of *habeas corpus* by Roy Burris. Writ denied.

*M. L. Matson,* for petitioner.

*V. S. Decker,* Co. Atty., for the State.

FURMAN, J. This is an original application made to this court for a writ of *habeas corpus* based upon the ground that the judge of the district court of Creek county is absent from the state. Accompanying the petition is an agreed statement of facts signed by the county attorney of Creek county and the attorney for petitioner. From this agreed statement of facts it appears that petitioner is confined in the jail of Creek county by authority of a commitment issued by W. E. Root, a justice of the peace of Creek county, as the result of an examining trial held before said justice of the peace, where petitioner was bound over to await the action of the district court of Creek county on a charge of adultery, and his bail was fixed at the sum of $500, which petitioner is unable to give.

It appears from the evidence that petitioner is charged with having committed adultery with Oma Monroe, who was not the wife of petitioner but who was the wife of George V. Monroe, and that this prosecution for adultery was instituted against petitioner and said Oma Monroe by the said George V. Monroe. The contention of petitioner is that he is not guilty of said charge and that there is no testimony sustaining the judgment of the justice of the peace holding petitioner to answer said charge.

In determining the sufficiency of testimony in any case, the nature of the subject-matter under inquiry must be considered. It is but seldom indeed that direct and positive evidence of adultery can be produced, for persons who have illicit sexual intercourse with each other ordinarily do not commit adulterous acts in the presence of witnesses. Therefore in such cases we cannot reasonably expect to have other than circumstantial evidence as to the commission of adultery. We are of the opinion that the testimony offered in behalf of the state was sufficient to authorize the judgment of the justice of the peace holding petitioner to answer the charge of adultery. But even if we were in error about this matter, petitioner himself has furnished further evidence as to his guilt, for it is proven that after he was committed to jail he wrote and sent to his codefendant, Oma Monroe, the following letter:

"My Own Dearest Darling: It seems as the whole world is against us. It just made me sick all over when the judge said what he did. They didn't have evidence to hold us over and you know that as well as I do. And Dearest that remark he said I made about you, 'There comes my whore, maybe I can get it of·her.' Dearest you know common sense will teach you that I would have more sense than to make that expression right in front of him and another thing you know I was still setting right by him when you came by and was not standing ·by no barber pole as he said I was. Dearest, Matson is going to start *habeas corpus* proceedings and try and get me out and if he can't get me out, well I reckon I will have to stand a trial. Dear one, I am going to ask one more favor of you. We nearly starve to death in here and the boys at the office have been getting me a meal now and then and we only get two meals a day and I

could eat as much as they give to four. Now Dear one, if you possibly can, please get me a meal ticket at the Merchants Cafe. You can get one for $3.50 and one meal a day that will last me a couple or three weeks and send me .50 to buy tobacco with if you can. Dear one, how I suffer for your sake and dearest I will hold you up as innocent as long as there is a drop of blood or a breath left in my body. Oh, how I would like to have gotten to him this morning. I would have made him say my wife and then curl up his lip like you was no better than a dog. Dear one when this ordeal is over, I will take you my darling wife where no one knows and start life anew and will be happy wont we dear and if he ever molests us in any way, sort of fashion I will kill him on sight. Dearest I love you more now than ever and God knows I will stand pat and will help you all I can. Dearest, I want to talk to you so bad. Dearest, just to take you in my arms. Dearest if I had never met you, you would never have had to suffer this humiliation. It is all my fault. God, why was I ever born? Dearest will you forgive me for causing you to suffer so? Dearest I have read both of these books. Now darling please for God's sake get me that meal ticket for I am nearly starved. My clothes are getting too big for me. I am falling off fast. If you can't do anything for me, please write me a letter and send me a book or two for it seems as that you are the only friend I have in this world. I will more than repay you dearest. Do what you can dearest for I am so hungry. Well I will write no more for this time. Remaining forever your own Darling Heart-Broken Brown Eyed Boy. With all my love and a thousand kisses."

This letter is strongly suggestive of the fact that petitioner had debauched the wife of George V. Monroe. Men who are guilty of such conduct as this are most dangerous members of society. There is nothing in which society has a deeper concern than in the preservation of the integrity of the home and in the protection of the sanctity of the marital relations. A country is simply an aggregation of homes, and no country can rise superior to the sanctity and purity of its homes. Therefore, whenever a man invades the sanctity of a home and debauches the wife of another, he is guilty of treason against society and becomes an enemy to the human race. The sooner such men are sent to the penitentiary and the longer they are kept there the better it will be for society.

Petitioner in the letter above set out complains bitterly that as the result of his confinement he is losing in flesh and that his clothes are becoming entirely too large for him. If he will take a philosophical view of the situation he can console himself with the reflection that this may not be an unmixed evil, for as his blood becomes thinner and cooler it may have the effect of moderating the ardor.of his affections for another man's wife and of assisting him in subduing his passions and keeping them within due bounds, which all good citizens should do. While petitioner may not take this view of the matter, yet if it has this effect it will certainly make a better and safer citizen of him and keep him out of trouble in the future. Seducing other men's wives and then threatening to kill the injured husband on sight if he objects to his wife's defilement are things which the law will not sanction, tolerate, or condone. Such men must either restrain their passions, leave the state, or expect to spend their time in jails or in the penitentiary.

The letter written by petitioner to his codefendant fully sustains the statement frequently made by this court, viz., that illicit love is a most prolific source of crime and assassination, for in this letter petitioner expresses a determination to possess the wife of George V. Monroe, and threatens to kill said Monroe if he attempts to interfere with this unlawful purpose. Human experience teaches that when a wife has been seduced she hates her husband and will not hesitate at any means to destroy him in order that she may gratify her illicit love. Many revolting assassinations have taken place in Oklahoma which were prompted by this motive alone, as is abundantly shown by the records of the courts.

The action of the justice of the, peace in committing petitioner to answer the charge of adultery is sustained. The only mistake made by the justice was in fixing the bond of petitioner at $500. It should have been larger.

The petition for a writ of *habeas corpus* will be denied.

ARMSTRONG, P. J., and DOYLE, J., concur.